UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAN CAPITAL ASSET SERVICING, INC., *formerly known as* NewLogic Business Loans, Inc., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-3212-B |
| AZKET E-INTELLIGENCE LLC, *doing business as* Azket E-Intelligence, and HENRY CROCKETT, *also known as* D. Crockett Henry, | § § § § § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Can Capital Asset Servicing, Inc. (CCAS)'s Motion for Default

Judgment (Doc. 13), filed on May 11, 2021. For the reasons discussed below, the Court **GRANTS**

**IN PART** and **DENIES IN PART** CCAS's motion.

I.

BACKGROUND[1]

This case arises from a loan agreement between CCAS and Defendants Azket E-Intelligence

LLC ("Azket E-Intelligence" or "Borrower") and Henry Crockett ("Crockett" or "Guarantor").[2]

Azket E-Intelligence entered into a "Business Loan Agreement" ("the Agreement") with WebBank

---

[1] The Court draws the facts from CCAS's complaint (Doc. 1).

[2] Throughout this Order, the Court refers to Azket E-Intelligence and Crockett collectively as "Defendants."

("Lender") on or about August 8, 2019. Doc. 1, Compl., ¶ 7. Pursuant to the Agreement, WebBank loaned $133,340.00 to Azket E-Intelligence. *Id.* Also pursuant to the Agreement, Azket E-Intelligence agreed to repay Lender "through Weekday ACH Debits" in the amount of $456.35 until Lender received all amounts due. *Id.* ¶ 9; Doc. 1-1, Business Loan Agreement, 1. As part of the Agreement, Crockett executed a personal guaranty (the "Personal Guaranty") for Azket E-Intelligence's payments to Lender. Doc. 1, Compl., ¶ 11. WebBank later assigned the Agreement to CCAS. *Id.* ¶ 8. After September 30, 2019, Azket E-Intelligence stopped making payments, breaching the Agreement and triggering Crockett's liability. *Id.* ¶ 12. CCAS has demanded that Defendants cure their breach by paying CCAS, but they have failed to do so. *Id.* ¶ 13.

CCAS filed a complaint in this Court on October 21, 2020, bringing three causes of action: breach of contract, breach of guaranty, and judicial foreclosure on collateral listed in the Agreement. *Id.* ¶¶ 16–24. CCAS seeks actual damages pursuant to the Agreement in the amount of $156,061.30; reasonable attorney's fees; court costs; post-judgment interest; and judicial foreclosure and possession of the collateral at issue. *Id.* ¶ 26. Defendants were properly served on February 1, 2021. *See* Doc. 7, Return of Service, 2; Doc. 8, Return of Service, 2. Defendants failed to answer or otherwise defend this lawsuit. Consequently, on April 2, 2021, the Clerk of Court entered default against Defendants. *See generally* Doc. 12, Clerk's Entry of Default. CCAS filed a motion for default judgment (Doc. 13) on May 11, 2021. CCAS's motion is now ripe for review.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 provides for the entry of default judgments in federal court. Rule 55 states that "[w]hen a party against whom a judgment for affirmative relief is sought

has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the Court may enter a default judgment against the defaulting defendant upon motion by the plaintiff. Fed. R. Civ. P. 55(b)(2). However, default judgments are a "drastic remedy" and thus are only used by courts in "extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1996) (citations omitted). As such, a party is not entitled to a default judgment merely because the defendant is technically in default. *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996) (citations omitted). A default judgment is rather "committed to the discretion of the district court." *United States v. 1998 Freightliner Vin # 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

In determining whether to enter default judgment against a defendant, courts in the Fifth Circuit employ a three-part analysis. *See, e.g.*, *id.* (citations omitted). First, courts consider whether the entry of default judgment is procedurally warranted. *See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include: (1) "whether material issues of fact" exist; (2) "whether there has been substantial prejudice"; (3) "whether the grounds for default are clearly established"; (4) "whether the default was caused by a good faith mistake or excusable neglect"; (5) "the harshness of a default judgment"; and (6) "whether the court would think itself obliged to set aside the default on the defendant's motion." *Id.*

Second, courts assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (noting that "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover"). In doing so, courts

are to assume that due to the defendant's default, the defendant admits all well-pleaded facts in the plaintiff's complaint. *Id.* However, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

Third, courts determine what form of relief, if any, the plaintiff should receive. *Ins. Co. of the W. v. H & G Contractors, Inc.*, 2011 WL 4738197, at *4 (S.D. Tex. Oct. 5, 2011) ("A defendant's default concedes the truth of the allegations of the Complaint concerning the defendant's liability, but not damages." (citing *Jackson v. FIE Corp.*, 302 F.3d 515, 524-25 (5th Cir. 2002))). Courts normally should not award damages "without a hearing or a demonstration by detailed affidavits establishing the necessary facts." *See United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam) (citations omitted). However, if "the amount claimed is a liquidated sum" or damages can be determined with mathematical calculation "by reference to the pleadings and supporting documents," a hearing is unnecessary. *James v. Frame*, 6 F.3d 307, 310-11 (5th Cir. 1993) (citations omitted). The plaintiff still must "provide an evidentiary basis for the damages it seeks." *Broad. Music, Inc. v. Bostock Billiards & Bar Assoc.*, 2013 WL 12126268, at *3 (N.D. Tex. Jan. 18, 2013). Courts have found that copies of contracts, invoices, purchase orders, emails with payment details, and statements of anticipated costs, together with computations and affidavits, are a sufficient evidentiary basis for damages. *See Genesis Servs., Inc. v. Screens Plus, Inc.*, 2016 WL 7036791, at *6 (W.D. La. Nov. 7, 2016) (relying upon copies of invoices and affidavits to calculate damages); *Jetstream of Hous., L.L.P. v. Cajun Pressure Control, L.L.P.*, 2016 WL 3024751, at *4 (W.D. La. Apr. 15, 2016) (relying upon affidavits, copies of contracts, and invoices to substantiate damages).

## III.

## ANALYSIS

Applying the three-part analysis, the Court concludes that a default judgment in this case is procedurally warranted and supported by a sufficient factual basis in CCAS's complaint. The Court thus **GRANTS** a default judgment on CCAS's breach-of-contract and breach-of-guaranty claims and awards CCAS $156,061.30 in actual damages, $1,815.00 in reasonable attorney's fees, $1,075.00 in court costs, and post-judgment interest on all damages awarded herein at the statutory rate. But the Court **DENIES WITHOUT PREJUDICE** CCAS's request to foreclose on and take possession of the collateral listed in the Agreement.

A.    *Whether a Default Judgment Is Procedurally Warranted*

After reviewing CCAS's motion in light of the six *Lindsey* factors, the Court finds that default judgment is procedurally warranted. First, Defendants have not filed any responsive pleadings. Consequently, there are no material facts in dispute. *See Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206. Second, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [CCAS's] interests." *Ins. Co. of the W.*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). Third, Defendants' failure to respond to the complaint and the Clerk's entry of default clearly establishes the grounds for default. Fourth, there is no evidence in the record to indicate that Defendants' silence is the result of a "good faith mistake or excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, Defendants have completely failed to respond to CCAS's complaint for over four months, mitigating the harshness of a default judgment. *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Lastly, there are no facts in the record that would give rise to "good cause" to set aside the default

if challenged by Defendants. *Lindsey*, 161 F.3d at 893. Thus, CCAS has met the procedural requirements for default judgment.

B.    *Whether the Pleadings Contain a Sufficient Basis for Judgment*

Due to their default, Defendants are deemed to have admitted the allegations set forth in CCAS's complaint. Nonetheless, the Court must still review the pleadings to determine whether they present a sufficient basis for CCAS's claims for relief. *See Nishimatsu Constr.*, 515 F.2d at 1206. In conducting this analysis, "the Fifth Circuit looks to [Federal Rule of Civil Procedure 8] case law for guidance." *Morales v. Rausch Grp. & Assocs.*, 2020 WL 6583023, at *3 (N.D. Tex. Nov. 10, 2020) (citation omitted). Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint's factual allegations "need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Additionally, "detailed factual allegations are not required, but the pleading must present more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Below, the Court analyzes CCAS's claims in light of Rule 8.

1.    Breach of contract

CCAS first moves for default judgment on its claim for breach of contract against Azket E-Intelligence. *See* Doc. 1, Compl., ¶ 16. Under Texas law,[3] the elements of a breach-of-contract

---

[3] There is a Utah choice-of-law clause in the Agreement, *see* Doc. 1-1, Business Loan Agreement, 9, but CCAS appears to rely upon Texas law in its pleadings. *See, e.g.*, Doc. 1, Compl., ¶¶ 15, 18. As noted

claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citations omitted).[4]

Applying the four breach-of-contract elements to this case, the Court finds there is a sufficient basis in the pleadings for judgment on CCAS's breach-of-contract claim. First, CCAS alleges that the Agreement constitutes a contract. *See* Doc. 1, Compl., ¶¶ 7–8; Doc. 13, Mot. Default J., ¶ 4. Second, CCAS alleges that it performed the contract by loaning $133,340.00 to Azket E-Intelligence. *See* Doc. 1, Compl., ¶¶ 7–8; Doc. 13-1, Aff., ¶ 8. Third, CCAS alleges that Azket E-Intelligence breached the contract by failing to make payments to CCAS. Doc. 1, Compl., ¶ 12. Fourth, CCAS alleges that it suffered damages of $156,061.30 as a result of Azket E-Intelligence's breach. *Id.* ¶ 14. Thus, accepting CCAS's factual allegations as true, the Court finds that there is a sufficient basis in the pleadings for the requested default judgment on the breach-of-contract claim.

### 2.   Breach of personal guaranty

CCAS next moves for default judgment on its claim for breach of guaranty against Crockett. *See* Doc. 1, Compl., ¶ 19. Both Utah and Texas law treat a breach-of-guaranty claim like a breach-of-contract claim: the plaintiff must show the existence of the guaranty and a breach of the guaranty. *Compare F.D.I.C. v. WS Sleeping Indian Ranch, LLC*, 2013 WL 5503183, at *3 (D. Utah

---

throughout this Order, the pertinent Utah and Texas law is the same.

[4] Utah and Texas have the same breach-of-contract elements. *Compare Glob. Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1214, 1226 (D. Utah 2015) (citation omitted), *with Smith Int'l*, 490 F.3d at 387 (citations omitted).

Oct. 3, 2013), *with United Cent. Bank v. Yoon*, 2015 WL 11120516, at *3 (N.D. Tex. Mar. 4, 2015) (citing *Byrd v. Est. of Nelms*, 154 S.W.3d 149, 157 (Tex. App.—Waco 2004, pet. denied)). Texas courts further break this inquiry into four elements and require a plaintiff to show: "(1) the existence and ownership of the guaranty agreement; (2) the terms of the underlying contract by the holder; (3) the occurrence of the conditions upon which liability is based; and (4) the failure or refusal to perform the promise by the guarantor." *Yoon*, 2015 WL 11120516, at *3 (citation and quotation marks omitted). The Court considers whether CCAS has sufficiently alleged these four elements.

The Court finds there is a sufficient basis for judgment on CCAS's breach-of-guaranty claim. First, CCAS alleges that, as part of the Agreement, Crockett executed a personal guaranty in which he personally guaranteed "the prompt payment to [CCAS] of all amounts owed by [Azket E-Intelligence] . . . under the . . . Agreement." Doc. 1-1, Business Loan Agreement, 12. Second, CCAS alleges that, pursuant to the Agreement, it loaned $133,340.00 to Azket E-Intelligence. *See id.* at 1; Doc. 13-1, Aff., ¶ 8. In exchange, Azket E-Intelligence "promise[d] to pay [CCAS] the Repayment Amount [of $170,675.20] and all other amounts [the Business Loan Agreement] require[d] [it] to pay." Doc. 1-1, Business Loan Agreement, 1–2. Third, CCAS alleges that Azket E-Intelligence's failure to make payments triggered Crockett's obligation to pay CCAS. Doc. 1, Compl., ¶ 12; *see* Doc. 1-1, Business Loan Agreement, 12. Fourth, CCAS alleges that Crockett has failed to make his required payments to CCAS and has thus breached the personal guaranty. Doc. 1, Compl., ¶ 22. Thus, accepting CCAS's allegations as true, the Court finds there is a sufficient basis in the pleadings for the requested default judgment on the breach-of-personal-guaranty claim.

In sum, the Court concludes that CCAS has shown a sufficient basis in the pleadings to recover on its breach-of-contract and breach-of-guaranty claims. The Court thus **GRANTS** CCAS's

request for entry of a default judgment.

C.    *Whether the Court Can Ascertain Damages*

Here, CCAS seeks: (1) actual damages, (2) attorney's fees, (3) costs, (4) post-judgment interest, and (5) judicial foreclosure and possession of collateral listed in the Agreement. Doc. 1, Compl., ¶¶ 24, 26; Doc. 13, Mot. Default J., ¶ 6. The Court must now determine whether CCAS's motion, along with its attached supporting documentation, is sufficient to allow the Court to award CCAS damages.

1.    Actual damages

CCAS requests $156,061.30 in actual damages. Doc. 13, Mot. Default J., ¶ 5. This request is based on the balance owed by Azket E-Intelligence to CCAS under the Agreement. *Id.* In support of its request, CCAS provides evidence including the Agreement, (Doc. 13-2), an affidavit from its Assistant General Counsel, (Doc. 13-1), records of Azket E-Intelligence's payment history, (Doc. 13-4), and CCAS's demand letter (Doc. 13-5). This evidence is of the type readily accepted by district courts in the Fifth Circuit. *See, e.g.*, *Genesis Servs.*, 2016 WL 7036791, at *6. Therefore, the Court **GRANTS** CCAS's request for $156,061.30 in actual damages.

2.    Attorney's fees

CCAS next asks for $1,815.00 in reasonable attorney's fees. The general rule in Texas is that attorney's fees can be recovered only if authorized by statute or contract, subject to certain exceptions. *Liquid Cap. of Am. Corp. v. Effective Bus. Sols. Inc.*, 2020 WL 2950412, at *9 (N.D. Tex. Mar. 30, 2020) (citations omitted), *R. & R. adopted*, 2020 WL 2926471 (N.D. Tex. June 2, 2020).[5]

---

[5] This is also the general rule in Utah. *See Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994) (citations omitted).

In the present case, the Agreement states that CCAS is entitled to "any and all expenses, including . . . attorneys' fees and expenses . . . which may be incurred by [CCAS] in the prosecution, defense, settlement and/or other resolution of any claim, demand, action or proceeding arising out of or relating to this Agreement . . . ." Doc. 1-1, Business Loan Agreement, 7. Because Defendants breached the Agreement and its accompanying guaranty, CCAS is entitled to reasonable attorney's fees.

The Fifth Circuit uses a two-step process for determining attorney's fees. *Paisano Cap. SA de CV v. 23 Tex. Produce, Inc.*, 2019 WL 3239152, at *6 (N.D. Tex. July 18, 2019) (citing *Smith v. Acevedo*, 478 F. App'x 116, 124 (5th Cir. 2012) (per curiam)). First, the Court calculates the "lodestar" by "multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003) (citation omitted). "The [C]ourt should exclude all time that is excessive, duplicative, or inadequately documented." *Smith*, 478 F. App'x at 124. Second, the Court can adjust the lodestar amount "based on the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)[, *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)]." *Id.* The *Johnson* factors are: (1) "time and labor required" for the litigation; (2) "novelty and difficulty of the questions" presented; (3) "skill requisite to perform the legal services properly"; (4) "preclusion of other employment"; (5) "customary fee"; (6) "[w]hether the fee is fixed or contingent"; (7) "limitations imposed by the client or circumstances"; (8) "amount involved and the result obtained"; (9) "experience, reputation, and ability of the attorneys"; (10) "'undesirability' of the case"; (11) "nature and length of the professional relationship with the client"; and (12) "[a]wards in similar cases." 488 F.2d at 717–19.

- 10 -

The first step in the lodestar analysis requires the Court to determine the reasonable number of hours expended by the attorneys on the lawsuit, as well as the reasonable hourly rate for the attorneys involved. *See Smith*, 478 F. App'x at 124 (citation omitted). The party requesting fees has the burden of establishing a reasonable hourly rate. *Kryptek Outdoor Grp., LLC v. Salt Armour, Inc.*, 2016 WL 7757267, at *5 (E.D. Tex. Mar. 28, 2016) (citing, *inter alia, Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). "The reasonable hourly rate is the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *BMO Harris Bank, N.A. v. RidgeAire, Inc.*, 2014 WL 12612803, at *1 (E.D. Tex. June 4, 2014) (quoting *Blum*, 465 U.S. at 896 & n.11.).

Here, CCAS's attorney has provided an affidavit and timekeeping record detailing the amount of time spent and work performed in the case. Doc. 13-9, Aff. of M.H. Cersonsky; Doc. 13-10, Timesheet of M.H. Cersonsky. CCAS's attorney, M.H. Cersonsky, performed 3.3 hours of work at a rate of $550.00 per hour. Doc. 13-9, Aff. of M.H. Cersonsky, 2. Thus, CCAS's attorney's fees total $1,815.00.

After reviewing Cersonsky's affidavit as well as the supporting invoices, the Court finds that the time he expended was reasonable. Nothing indicates that Cersonsky was billing for "excessive, duplicative, or inadequately documented" time. *See Smith*, 478 F. App'x at 124. Consequently, the Court accepts 3.3 hours as the reasonable number of hours expended by CCAS's attorney.

With respect to the hourly rate, the Court also finds it reasonable. Cersonsky avers that his rate is in line with the range of fees customarily charged by lawyers with similar experience and expertise. Doc. 13-9, Aff. of M.H. Cersonsky, 2–3. In light of his affidavit, as well as the Court's knowledge of rates charged for legal services by attorneys with similar levels of skill, experience, and

competence, the Court concludes Cersonsky's rate of $550.00 per hour is reasonable. *See, e.g.,* *Michaels Stores Procurement Co. v. DMR Constr., Inc.*, 2019 WL 399074, at *2 (N.D. Tex. Jan. 31, 2019).

Accordingly, the Court concludes the lodestar amount is $1,815.00. Considering the twelve *Johnson* factors described above, the Court does not find it necessary to make any adjustments to this figure. Thus, CCAS's request for attorney's fees in the amount of $1,815.00 is **GRANTED**.

3.    Costs

CCAS also seeks $1,075.00 in court costs. Doc. 13, Mot. Default J., ¶ 5. A prevailing party in a civil action is entitled to recover its costs unless a federal statute, the federal rules, or the court provides otherwise. *See* Fed. R. Civ. P. 54(d)(1). Taxable court costs include, among others: (1) fees paid to the clerk and marshal; (2) court reporter fees for all or part of a transcript; (3) witness fees and related expenses; (4) printing costs; and (5) fees for copies of papers necessarily obtained for use in the case. 28 U.S.C. § 1920.

Here, CCAS seeks $1,075.00 in costs, namely the filing fee ($400.00) and attempted rush service fee ($675.00). Doc. 13-11, Court Costs. These are both reasonable and taxable under the law. *See Burrell v. Akinola*, 2018 WL 259457, at *2 (N.D. Tex. Jan. 2, 2018) (granting request for reimbursement of $400 filing fee and $235 service fee, among other court costs). Therefore, the Court **GRANTS** CCAS's request for costs in the amount of $1,075.00.

4.    Post-judgment interest

CCAS requests post-judgment interest at the statutorily determined rate. Doc. 13, Mot. Default J., ¶ 6. "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Simply put, district courts do not have the discretion to deny

post-judgment interest on monetary judgments. *Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 855 (S.D. Tex. 2017) (citing *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010)). Post-judgment interest "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). The Court **GRANTS** CCAS's request for post-judgment interest on all damages awarded herein, at the statutory rate, from the entry of the final default judgment until paid.

5.     Foreclosure and possession of collateral

Finally, CCAS seeks "judicial foreclosure of its lien regarding the subject collateral," thereby permitting "possession of the collateral" to satisfy the judgment against Defendants. Doc. 13, Mot. Default J., ¶ 6.

The Court denies this request without prejudice. CCAS's pleadings lack the necessary information for the Court to evaluate the merits of this request. First, CCAS has not cited to any law demonstrating its entitlement to foreclose on security interests. Second, CCAS has not shown that it would be entitled to foreclose under applicable law. For example, the Court has identified several unexplained issues in the UCC filing (Doc. 13-7) submitted by CCAS: (1) the filing is dated October 16, 2018, but CCAS's complaint alleges that its Agreement with Defendants began on or around August 8, 2019, *see* Doc. 1-1, Business Loan Agreement, 1; (2) an unidentified company is listed as the "secured party's name," Doc. 13-7, UCC Statement, 1; and (3) the list of collateral in the filing does not mirror the list of collateral upon which CCAS wishes to foreclose. *Compare id. with* Doc. 1, Compl., ¶ 23 and Doc. 1-1, Business Loan Agreement, 5–6. For these reasons, the Court **DENIES**

**WITHOUT PREJUDICE** CCAS's request for foreclosure on its security interests and possession of the subject collateral.

## IV.

## CONCLUSION

In sum, a default judgment against Defendants is both procedurally and substantively warranted. Thus, the Court **GRANTS** CCAS's Motion for Default Judgment (Doc. 13) insofar as it seeks entry of a default judgment. Further, the Court **GRANTS IN PART** and **DENIES IN PART** CCAS's requests for relief. The Court grants CCAS's request for actual damages in the amount of $156,061.30, attorney's fees in the amount of $1,815.00, court costs in the amount of $1,075.00, and post-judgment interest. However, the Court denies without prejudice CCAS's request for judicial foreclosure on its security interests and possession of the subject collateral.

SO ORDERED.

SIGNED: June 17, 2021.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE